IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Michael Nowell, | : | |
| | : | Case No. 1:03cv859 |
| Plaintiff, | : | |
| | : | District Judge Susan J. Dlott |
| v. | : | |
| | : | |
| City of Cincinnati, et al. | : | |
| | : | |
| Defendants. | : | |

ORDER GRANTING IN PART AND DENYING IN PART
MOTIONS IN LIMINE

This matter is before the Court on Plaintiff's Motion in Limine Preventing Medical

Information (Doc. 32), Defendant's Response to Plaintiff's Motion in Limine (Doc. 33),

Defendant's Motion in Limine (Doc. 34) and Plaintiff's Response to Defendants' Motion in

Limine (Doc. 35).   For the following reasons, the Court DENIES Plaintiff's Motion in Limine as

moot and GRANTS in part and DENIES in part Defendants' Motion in Limine.

I.      FACTUAL BACKGROUND

This lawsuit stems from an incident that occurred between the Plaintiff, Michael Nowell,

and certain City of Cincinnati police officers on February 14, 2002, in the Madisonville section

of Cincinnati.  Nowell claims that at approximately noon on that date, he was bouncing a

basketball outside his home when Officer Dwayne Dawson ("D. Dawson") approached Nowell

and began asking him personal information.  (Doc. 1 ¶¶ 9-13.)  When Nowell refused to answer

the questions, Officer D. Dawson escorted Nowell to his police cruiser and patted Nowell down to check for weapons. (*Id.* at ¶ 14, 16.) Several minutes later, a second officer, Anthony Dawson ("A. Dawson") arrived at the scene.[1] (*Id*. at ¶ 19.) D. Dawson allegedly told A. Dawson that everything was under control. (*Id.* at ¶ 23.) Nowell alleges that then, without warning or provocation, A. Dawson attacked Nowell by twisting Nowell's arms, picking him up and then slamming his head into the concrete. (*Id.* at ¶¶ 25-26.) Nowell claims that A. Dawson then kneed him in the spine, pulled his hair, slammed his head into the concrete several times, maced him repeatedly, and used his nightstick to further inflict pain. (*Id.* at ¶27.) The officers then handcuffed Nowell and placed him in the rear of a police cruiser. (*Id*. at ¶ 34.) Several officers then arrived to investigate the incident, including Sergeant Nastold, a supervisor with the Cincinnati Police Division. (*Id*. at ¶ 4, 36.) The officers did not arrest Nowell but issued him a citation for disorderly conduct. (*Id*. at ¶ 38.)

Nowell asserts that at no time did he commit unlawful conduct or give the officers cause to question or assault him. The day after the incident, Nowell filed a complaint with the Office of Municipal Investigations. (*Id.* at ¶ 39.) On October 10, 2002, the Cincinnati Police Internal Investigations Section issued a report concerning its investigation into Nowell's complaint and setting forth its conclusions concerning the Officers' conduct. (Doc. 34-2.) On or about November 22, 2002, the Citizen's Complaint Authority determined the Officers detained Nowell without reasonable suspicion or probable cause, used excessive force against Nowell and withheld medical treatment. (*Id*. ¶ 47.) On March 27, 2003, Nowell received a letter from Cincinnati Police Captain Daniel Gerard, Internal Investigations Section Commander, advising

---

[1] Officers Anthony Dawson and Dwayne Dawson are not related.

2

Nowell that the officers and their supervisor "used excessive force and violated police procedure when they searched you, slammed you to the ground and sprayed you with chemical irritant." (*Id*. at ¶ 48.)

Nowell brings the following claims against the City of Cincinnati, Officers D. Dawson and A. Dawson, and Sergeant Nastold: false imprisonment, arrest without probable cause, excessive force, malicious prosecution, spoliation of evidence, violation of 42 U.S.C. § 1983, and violation of 42 U.S.C. § 1988.  Defendants deny any wrongdoing.  (Doc. 5.)

**II.      Plaintiff's Motion in Limine Preventing Medical Information**

The first matter presented for the Court's consideration is Nowell's motion to exclude the introduction or discussion of medical records reflecting Nowell's mental health treatment after February 14, 2002, the date of the incident.  (Doc. 32.)   Defendants respond that because Nowell has abandoned his claim that his mental health issues were caused by the Defendant's actions, they will not seek to use at trial any medical records relating to Nowell's mental heath treatment subsequent to February 14, 2002.  (Doc. 33.)  Based on the Defendants' assurance that it will not seek to introduce such records, Nowell's motion in limine is hereby DENIED as moot.

**III.     Defendants' Motion in Limine to Exclude Portions of the Internal Investigation
           Report and to Prohibit Investigator and Chief Counsel from Testifying Regarding
           Their Legal Conclusions**

The second matter presented for the Court's consideration is Defendants' Motion in Limine to exclude portions of the report made by the Cincinnati Police Department Internal Investigations Section concerning the incident between the officers and Nowell.  (Doc. 34.) Defendants additionally seek to prohibit Investigator Deborah A. Bauer and Chief Counsel Terrance Cosgrove from testifying regarding their conclusions expressed in the Internal

Investigation report.  (*Id*.)  Bauer was the investigator in charge of the Police Department's internal investigation into the matter involving Nowell.  (Doc. 34-2 at 1.)  Cosgrove rendered a legal opinion concerning the propriety of Officer D. Dawson's original contact with Mr. Nowell and the subsequent arrest for disorderly conduct.  (Doc. 34-2 at 10.)

A motion in limine is a request for guidance by the Court regarding an evidentiary question.  The trial court may, within its discretion, provide such guidance by making a preliminary ruling with respect to admissibility.  *United States  v.  Luce*, 713 F.2d 1236, 1239 (6th Cir. 1983).  Should a trial court render a decision on a motion in limine, the trial court may change its ruling for whatever reason, when the evidence is actually offered or objected to at trial.  *Id.*  In essence, a ruling on a motion in limine is simply an advisory opinion by the trial court subject to change.  *Id*.

### A.  The Internal Investigations Section Report ("IIS Report")

Defendants move to exclude the IIS Report from evidence pursuant to Federal Rule of Evidence 402 barring the admissibility of irrelevant evidence, Rule 403 permitting the exclusion of relevant evidence on grounds of prejudice or confusion, and Rule 802 barring the admissibility of hearsay.  (Doc. 34.)

The Report consists of the following sections: a cover page, an introduction, summaries of witness interviews, and a conclusion.  (Doc. 34-2.)  The witness interview section summarizes the statements of the plaintiff, four eyewitnesses, Officer A. Dawson, Officer D. Dawson, Police Specialist J.C. Whitehead, and Police Sergeant Nastold.  The section also includes Chief Counsel Cosgrove's legal opinion concerning whether Officer D. Dawson had reasonable suspicion to

4

detain or probable cause to arrest the plaintiff.  The conclusion section lists each of Nowell's allegations and the investigator's determination of the validity of the allegations.

The Court declines to exclude the IIS Report wholesale.  Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  The Report sets forth the Cincinnati Police Internal Investigations Section's findings and conclusions concerning Nowell's allegations that the defendants acted improperly when they detained him on February 14, 2002.  The Report is therefore relevant to Nowell's claims, which include arrest without probable cause and use of excessive force.

Further, Federal Rule of Evidence 803(8)(C), which excludes from the hearsay rule certain public records, expressly contemplates the admissibility of investigative reports such as the IIS Report that "result[] from an investigation made pursuant to authority granted by law." The hearsay exception set forth in Rule 803(8) is based upon the assumption that public officers will perform their duties, that they lack motive to falsify, and that public inspection to which many such records are subject will disclose inaccuracies.  5 Wigmore, Evidence § 1632 at 618-21 (Chadbourn rev. 1974).  Under the Rule, a public record is not excluded by the hearsay rule if it is a record, report, statement, or data compilation setting forth "(A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report..., or (C) in civil actions and proceedings ..., factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."  Fed.R.Evid. 803(8).

The guarantee of accuracy of public records admissible under Rule 803(8) depends on "the assumption that a public official will perform his duty properly and the unlikelihood that he will remember details independently of the record." Fed.R.Evid. 803, advisory committee note to Paragraph (8). However, the Rule does not require that the official have personal knowledge of the matters recorded. Rule 803(8)(C) specifically contemplates that an investigator charged with making "factual findings" will not have personal knowledge of the matter and will have to rely on other sources of information. *See Combs v. Wilkinson*, 315 F.3d 548, 555-56 (6th Cir. 2002) (noting that "[i]nvestigative reports 'embody the results of investigation and accordingly are often not the product of the declarant's firsthand knowledge.'" (*quoting* 2 *McCormick on Evidence* § 296 (5th ed.1999).)

In *Combs*, a case involving several inmates' claims that prison guards used excessive force in quelling a riot, the Sixth Circuit held that a Use of Force Committee Report, based on staff and inmate interviews and numerous documents, was admissible under Rule 803(8). *Id.* In so holding, the court noted that if the Rule required the investigator to have personal knowledge of the matter then "an investigative report would never be admissible as such reports typically are not prepared by persons directly involved in the matter under investigation." *Id.*[2]

---

[2] The Sixth Circuit's decision in *Combs*, as well as its more recent decision in *Hickson Corp. v. Norfolk S. Ry. Co.*, Case Nos. 03-5801, 03-5910, 03-5911, 124 Fed. Appx. 336 (6th Cir. Feb. 16, 2005) (unreported case), confirm that it is not necessary that the person who prepares the report have first-hand knowledge of the events for the report to be admissible pursuant to Rule 803(8). This signifies a departure from the Sixth Circuit's earlier position, articulated in *Miller v. Field*, 35 F.3d 1088, 1091 (6th Cir. 1994), in which the court held that "[t]he 'factual findings' in a report qualifying for a Rule 803(8)(C) exception to the hearsay rule must ... be based upon the knowledge or observations of the preparer of the report." Thus, while the Sixth Circuit has not expressly overruled *Miller*, the Court follows the rule set out by *Combs* and *Hickson*.

6

Rule 803(8) presumes the admissibility of an investigator's findings "unless the sources of information or other circumstances indicate a lack of trustworthiness." Fed.R.Evid. 803(8)(C); *see also* Fed.R.Evid. 803(8) advisory committee note (stating that the Rule "assumes admissibility in the first instance but with ample provision for escape if significant negative factors are present.") In light of this presumption, the party opposing the admission of the report must prove that the report is not trustworthy. *See Hickson Corp. v. Norfolk S. Ry. Co.*, Case Nos. 03-5801, 03-5910, 03-5911, 124 Fed. Appx. 336, 344 (6th Cir. Feb. 16, 2005) (unreported case).

The Court may use four factors in assessing whether an evaluative report is trustworthy: (1) the timeliness of the investigation, (2) the special skill or experience of the official, (3) whether a hearing was held and the level at which conducted, and (4) possible motivation problems. *See* Fed.R.Evid. 803 advisory committee note to Paragraph (8). In addition to these criteria, the Sixth Circuit has stated that when admitting a public record or report, "[R]ule 803(8)(C) [should be applied] in a common sense manner, subject to the district court's sound exercise of discretion in determining whether the hearsay document offered in evidence has sufficient independent indicia of reliability to justify its admission." *Miller v. Caterpillar Tractor Co.*, 697 F.2d 141, 144 (6th Cir. 1983). Thus, a court may conclude that an investigative report is reliable and its "factual findings" admissible *even if the underlying factual bases for the factual findings are themselves inadmissible*. *See* 4 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence*, ¶803(8)[03] (1994).

In this matter, the IIS Report is admissible as a public record under the hearsay exception of Rule 803(8). As to the first indicia of trustworthiness of investigative reports, timeliness, the Court finds that the IIS Report was timely. The Report is dated October 10, 2002, approximately

eight months after the incident involving Nowell and the Officers.  The timeliness factor evolved

out of concern over staleness or tampering with evidence.  *See Gentile v. County of Suffolk*, 129

F.R.D. 435, 450 (E.D.N.Y. 1990).  There is no indication that the information Investigator Bauer

relied on was stale or compromised at the time she compiled the Report.  As to the second

indicia, the skill or experience of the official, the Court presumes that investigator Bauer had the

requisite experience to issue the Report.  While the Defendants have not provided the Court with

Bauer's qualifications, the record shows that Bauer, a Sergeant at the time she conducted the

investigation, has since been promoted to Lieutenant.  (Doc. 34 at 6.)  The IIS Committee

presumably assigned Bauer to conduct the investigation into the matter, and the Report was

approved by Capt. Gregoire, Commander, Internal Investigations Section.  Accordingly,

applying its common sense, the Court finds that this factor weighs in favor of admissibility.

Regarding the third indicia, whether a hearing was held, there is no evidence in the record that a

hearing was held to assess Nowell's allegations.  Thus, this factor does not bolster the

trustworthiness of the Report.

   Finally, as to whether the Report was plagued by motivation problems or bias, the Court

concludes that it was not.  There is no indication that Bauer, who compiled the Report, was at all

involved in the incident at issue.  Further, given the Report's conclusions, it appears clear that

Bauer's investigation was not biased toward the Cincinnati Police Department of which she is a

member.  There is no reason to suspect bias in Bauer's investigation or factual findings.  On

balance, these factors weigh in favor of trustworthiness and, therefore, admissibility.

Accordingly, the Report is admissible subject to certain portions being excluded by another

evidentiary rule such as double hearsay.

### 1.    Witness Interviews

Defendants argue that the portions of the Report recounting the interviews of the Plaintiff and the four eyewitnesses should be excluded as hearsay and that they are not saved by the hearsay exception set forth in Rule 803(8).[3]  The Court declines to rule at this stage of the proceedings on the admissibility of Mr. Nowell's statement as summarized in the Report.  The Court anticipates that Nowell will testify at trial and will be subject to cross-examination. Accordingly, his statement may be admissible as a prior statement of a witness pursuant to Rule 801(d)(1)(B).

The portions of the Report summarizing the interviews of the four eyewitnesses, on the other hand, are hearsay under Rule 801 and do not fall within any hearsay exception set forth in Rule 803.  "'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed.R.Evid. 801. The four eyewitness statements are classic hearsay.  While the IIS Report is a public record pursuant to 803(8)(C), Rule 803(8) does not circumvent the hearsay rule; any double hearsay contained in a report is admissible only if each level of hearsay qualifies independently for a hearsay exception. Fed.R.Evid. 805.  The statements of these eyewitnesses are not "matters observed pursuant to duty imposed by law" as the witnesses themselves had no legal duty to observe the incident involving Nowell nor to make a statement to the police regarding their observations.  *See* Fed.R.Evid. 803(8)(B).  Rather, they are merely components from which the

---

[3]    Defendants do not argue that the statements of the Cincinnati Police Officers should be excluded.  Indeed, these statements are not hearsay by virtue of the fact that they are admissions by a party-opponent.  *See* Fed.R.Evid. 801(d)(2).

investigator was able to make her "factual findings."  Accordingly, the Court will exclude from evidence the portions of the Report summarizing the four eyewitness statements.

### 2.    Cosgrove's Legal Opinion

Defendants argue that the statement of Chief Counsel Cosgrove contained in the Report, including his legal opinion as to whether Officer D. Dawson has reasonable suspicion to detain or probable cause to arrest Nowell, should be excluded for two reasons.  First, Defendants argue Cosgrove's statement should be excluded because it was premised on incomplete facts and is unreliable and untrustworthy, thus it does not satisfy the hearsay exception criteria of Rule 803(8)(C).  Plaintiff responds that Defendants cannot reasonably argue that their own attorney's opinion is untrustworthy.  Next, Defendants argue that the statement should be excluded because Cosgrove has not been named as an expert witness and testimony asserting legal conclusions usurps the role of the jury.  (Doc. 34 at 5-9.)  Regarding this argument, the Plaintiff counters that Cosgrove's testimony is not expert testimony but is admissible as opinion testimony of a lay witness under Rule 701.  (Doc. 35 at 5.)

The Court concludes that Cosgrove's statements as summarized in the Report are not hearsay because they are admissions of a party-opponent.  *See* Fed.R.Evid. 801(d)(2)(D) ("A statement is not hearsay if ... [t]he statement is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship.") Admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility.  *See* Fed.R.Evid. 801 advisory committee note (stating that "[n]o guarantee of trustworthiness is required in the case of an admission.")  To qualify as an admission of a party-opponent under Rule

801(d)(2)(D), the testimony must (1) be an admission and (2) be made concerning a matter within the scope of the declarant's employment. *See Aliotta v. Nat'l R.R. Passenger Corp.*, 315 F.3d 756, 761 (7th Cir. 2003). Admissions by party-opponent's agent need not necessarily be based on personal knowledge in order to be admissible. *Polkow v. CSX Transportation, Inc.*, No. 1:02CV72, WL 23784462, at *1 (N.D.Ohio Oct. 1, 2003) (*citing MCI Communications Corp. v. American Tel. and Tel. Co.*, 708 F.2d 1081, 1146 (7th Cir.1983).

Cosgrove's statement that Officer D. Dawson did not have reasonable suspicion to detain or probable cause to arrest Nowell is an "admission"; to qualify as an admission, the statement need only be made by the party against whom it is offered. *Aliotta*, 315 F.3d at 761. The statement also was made within the scope of Cosgrove's employment as chief counsel of the City's Law Department. Cosgrove's job is to render legal opinions of the sort rendered in the course of the investigation into Nowell's allegations of police misconduct. Accordingly, this section of the Report is not hearsay pursuant to Rule 801(d)(2).

Rule 801(d)(2) does not, however, trump all other rules of Evidence. In this case, the Court finds that the portion of Cosgrove's statement expressly reciting his legal opinion should be excluded by Rule 702 governing expert testimony. While Cosgrove has not been named as an expert witness in this matter, his testimony concerning his legal conclusion as to the propriety of Officer D. Dawson's conduct requires "specialized knowledge" of the law such that it cannot be construed as lay testimony.

Finally, while testimony on ultimate facts is authorized by Rule 704, testimony on ultimate questions of law is not favored. *Specht v. Jensen*, 853 F.2d 805, 808 (10th Cir. 1988) (noting that a number of federal circuits, including the Sixth, have held that an expert witness

11

may not give an opinion on ultimate issues of law).[4]  "It is the function of the trial judge to determine the law of the case.  It is impermissible to delegate that function to a jury through the submission of testimony on controlling legal principles."  *United States v. Zipkin*, 729 F.2d 384, 387 (6th Cir. 1984).

Therefore, while Cosgrove's statement is, in general, admissible as an admission of a party-opponent, the Court will exclude from evidence the portion of his statement in the Report setting forth his ultimate legal conclusion concerning whether Officer D. Dawson had reasonable suspicion to detain or probable cause to arrest Nowell.

### 3.  Investigator Bauer's Conclusions

Defendants argue that Investigator Bauer's conclusions in the Report should be excluded because they are not based on her own perceptions but on the unsworn statements of third parties, because they are not helpful to the jury but merely tell the jury what conclusion to reach, and because they are based upon specialized knowledge.  The Court disagrees.

For the reasons discussed in the preceding section, Bauer's conclusions constitute "factual findings resulting from an investigation made pursuant to authority granted by law" such that they are admissible pursuant to Rule 803(8), as well as admissions of a party-opponent admissible pursuant to Rule 801(d)(2).  That her conclusions are not based on firsthand

---

[4]  The advisory committee note to Rule 704 provides: "The abolition of the ultimate issue rule does not lower the bars so as to admit all opinions.  Under Rules 701 and 702, opinions must be helpful to the trier of fact, and Rule 403 provides for exclusion of evidence which wastes time.  These provisions afford ample assurances against the admission of opinions which would merely tell the jury what result to reach....  They also stand ready to exclude opinions phrased in terms of inadequately explored legal criteria.  Thus the question, 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to know the nature and extent of his property and the natural objects of his bounty and to formulate a rational scheme of distribution?' would be allowed."

knowledge is not fatal, and the Court finds that the statements of the eyewitness and Officers upon which Bauer relied are sufficiently trustworthy.  Had Bauer relied solely on the statements of the eyewitnesses and excluded from consideration the testimony of the two Officers, Specialist Whitehead, and Sergeant Nastold, the Court might have reached a different result.  However, the information on which Bauer relied, taken as a whole, was "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.  Fed.R.Evid. 703.  Additionally, the Supreme Court has confirmed that "factual findings" admissible under Rule 803(8)(C) include conclusions and opinions of the investigator.  *Beech Aircraft Corp. v. Rainey*, 488 U.S. 153, 162 (1988) (citing *Baker v. Elcona Homes Corp.*, 588 F.2d 551, 557-58 (6th Cir. 1978), which held that "factual findings admissible under Rule 803(8)(C) may be those which are made by the preparer of the report from disputed evidence.")

Neither does Rule 704 bar the admissibility of Bauer's conclusions.  To the contrary, the Rule provides that "testimony in the form of an opinion or inference otherwise admissible *is not objectionable* because it embraces an ultimate issue to be decided by the trier of fact."  Fed.R.Evid. 704(a) (emphasis added).  Bauer's conclusions are not, as Defendants' suggest, legal conclusions.  Rather, they are couched in terms of whether Cincinnati Police Department Rules were violated by the Officers.  Unlike Chief Counsel Cosgrove's legal opinion, which this Court has determined should be excluded from evidence, Investigator Bauer's conclusions are precisely the sort of findings that Rule 803(8) contemplates as admissible evidence.  The Court additionally finds that each of Bauer's conclusions are relevant to the claims asserted by Nowell in this matter.

13

**B.    Trial Testimony**

The Court declines to rule at this stage in the proceedings whether Bauer and Cosgrove will be permitted to testify at the trial of this matter.

**IV.    CONCLUSION**

For the foregoing reasons, the Court **DENIES** Plaintiff's motion in limine regarding medical records as moot (Doc. 32), and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion in Limine. (Doc. 34).  Defendants' motion is granted as to the portions of the Internal Investigations Section Report consisting of the interviews of eyewitnesses Thomas, Fritz, Tramber, and Bauman and the legal conclusion of Chief Counsel Cosgrove.  Defendants' motion is DENIED as to the remainder of the IIS Report and as to the trial testimony of Cosgrove and Bauer.

IT IS SO ORDERED.


    ___s/Susan J. Dlott___
    Susan J. Dlott
    United States District Judge

14